**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4784-16T2
            A-4786-16T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

K.M. and B.M.L.,

    Defendants-Appellants.

_____

IN THE MATTER OF B.L., JR.,
a Minor.

_____

Submitted May 24, 2018 – Decided June 28, 2018

Before Judges Reisner and Mayer.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Morris County,
Docket No. FN-14-0076-16.

Joseph E. Krakora, Public Defender, attorney
for appellant K.M. (Celeste Dudley-Smith,
Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney
for appellant B.M.L. (Anthony Van Zwaren,
Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent (Jason W. Rockwell, Assistant

Attorney General, of counsel; Susan J. Saraiva, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Maria Emilia Borges, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendants K.M. (Kate) and B.M.L. (Bob)[1] appeal from a December 15, 2016 fact-finding order determining they abused or neglected their son, B.L., Jr. (Billy).[2] We affirm.

The following facts are derived from the record of the fact-finding hearing. On February 22, 2016, the Division of Child Protection and Permanency (Division) received a referral from a hospital social worker, alleging that Kate overdosed and tested positive for marijuana and opiates. The hospital records from that date indicated Kate tested positive for both substances. The information lead to an investigation by the Division. The Division was informed that Kate had relocated from Pennsylvania to New Jersey, and was living in New Jersey with her son Billy, who was

---

[1] We use initials and pseudonyms to protect the parties' privacy interests. R. 1:38-3(d).

[2] The December 15, 2016 order was appealable as a result of the June 1, 2017 order terminating the litigation.

A-4784-16T2

one and a half years old at that time, Bob, Billy's father, and Bob's parents, Billy's paternal grandparents.

The same day as the referral, a Division caseworker went to the paternal grandparents' home to check on Billy. Shortly after the caseworker arrived, Kate and Bob returned from the hospital. Kate yelled profanities at the caseworker and refused to answer questions. Bob declined to speak with the caseworker. The caseworker was unable to observe Billy during her visit.

The next day, Division caseworker Almira Esen returned to the paternal grandparents' home. The paternal grandmother told Esen that Kate, Bob, and Billy lived in a camper parked on the side of her home. The paternal grandmother allowed Esen to see the camper. Esen observed Kate and Billy inside the camper, but Esen was not permitted to enter the camper or the home. Kate began yelling at Esen that the Division would need an order to conduct an investigation. Kate also informed Essen she intended to return to Pennsylvania and would be leaving Billy in New Jersey with Bob.

Bob arrived while Esen was at the home. Bob refused to discuss Kate's substance abuse and hospitalization. Esen asked Bob whether he thought Kate would leave New Jersey while the investigation was pending. Bob responded that Kate did not have

3

a car, did not drive, and he "would do anything to protect his son."

Due to the lack of compliance with the Division's investigation, a Division caseworker telephoned Kate to explain that the Division was seeking a court order to compel the parents' cooperation. Kate again yelled at the caseworker, stating the Division had no jurisdiction because Kate was an out-of-state resident. Kate claimed she had returned to Pennsylvania and refused to give the caseworker her address. Subsequent to this communication between Kate and the caseworker, Kate left New Jersey with Billy.

The Division filed a complaint seeking care and supervision of Billy, which was granted. In addition, Kate was ordered to return to New Jersey with Billy within twenty-four hours.

Bob repeatedly told the Division caseworkers that he lacked an address or telephone number for Kate and was unable to bring Kate and Billy back to New Jersey. Bob also told the caseworkers that he had no concerns regarding Kate's ability to care for Billy.

In a follow up conversation with the Division, Bob confirmed that he spoke with Kate, and told her about the court order requiring her to return to New Jersey with Billy. According to Bob, Kate refused to return to the state. Bob also told the

caseworker he did not trust the Division and "only if the Division will sign that [Billy] will not be removed" would he provide Kate's address. Bob maintained that he did not know Kate's whereabouts with Billy.

Kate eventually appeared in court on April 8, 2016. Billy was found at his paternal grandparent's home on that date, and the Division conducted an emergency removal of Billy. As of April 8, Billy was missing from the state for thirty-two days.

After completing its investigation, the Division substantiated Kate and Bob for neglect of Billy. The Division noted that Kate and Bob failed to comply with court orders, Kate was hospitalized for a suspected drug overdose and tested positive for marijuana while she was caring for Billy, Bob tested positive for marijuana, and Bob failed to recognize the risk to his son while Billy was in Kate's care. The Division also considered that Kate neglected Billy due to her failure to return Billy to the state in accordance with a court order.

On December 15, 2016, the judge issued a written opinion after the fact-finding hearing was completed. The judge deemed Kate's testimony not credible because her trial testimony was inconsistent with previous statements she made to the hospital, the Division, and the evaluators. The judge found that Kate's

testimony also varied from Bob's statements to the Division, the court, and the evaluators. The judge observed that Kate was "vague, evasive and, at times, defensive." During her direct testimony, when Kate was questioned about her prior admissions, she responded that she "did not recall." On cross-examination, Kate responded "I don't remember," "I guess," or "I think so." The judge found the testimony of the Division's caseworkers credible and their testimony consistent with the evidence submitted during the fact-finding hearing.

In her written opinion, the judge found the Division established the allegations of abuse and neglect by a preponderance of the evidence in accordance with N.J.S.A. 9:6-8.21(c)(4)(b). The judge determined that Kate and Bob "failed to exercise a minimum degree of care and were aware of the dangers inherent in the situation." The judge concluded Bob "failed to adequately supervise [Billy]" and Kate "recklessly created a risk of serious injury to [Billy]."

Specifically, the judge found the Division proved Kate had "untreated substance abuse issues at the time of the initial referral and at the time of [Billy's] removal and that she was in a caretaking role during both of those time periods." The judge further found Kate placed Billy at substantial risk of harm when

A-4784-16T2

she absconded with Billy knowing the Division had a pending investigation and a court hearing scheduled for care and custody of Billy.

As for Bob, the judge found his statements to the Division caseworker that Kate would not leave the state because Kate did not drive and did not have a car and that he would do anything to protect Billy were not truthful. The judge concluded Bob allowed Kate to leave the state with Billy and then professed his ignorance of Kate's whereabouts for more than a month. The judge found Bob knew where Kate and Billy resided, especially because Bob attempted to negotiate with the Division concerning Billy's location in return for a promise by the Division not to remove Billy.

Kate and Bob appeal from the December 15, 2016 order finding they neglected Billy. We consolidated their separate appeals.

The scope of our review of an order finding abuse and neglect is limited. N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014). We will uphold the trial judge's factual findings and credibility determinations if they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). We will only overturn the judge's findings if they "went so wide of the mark that the judge was clearly mistaken." Ibid.

However, we do not give "special deference" to the trial court's interpretation of the law. D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)). We apply a de novo standard of review to legal issues. Id. at 245-46.

The adjudication of abuse and neglect is governed by Title 9. N.J.S.A. 9:6-8.8; N.J.S.A. 9:6-8.21 to -8.73. Under Title 9, an abused and neglected child is defined as:

> a child less than [eighteen] years of age whose . . . physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The Supreme Court has instructed that the abuse and neglect standard under Title 9 is satisfied when the Division demonstrates that a parent has failed to exercise a minimum degree of care. G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 181 (1999). "'Minimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." Id. at 178. In G.S., the Court held "a [parent] fails to exercise

a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.

When determining whether a parent has failed to exercise a minimum degree of care and has therefore neglected or abused a child,

> the inquiry should focus on the harm to the child and whether that harm could have been prevented had the [parent] performed some act to remedy the situation or remove the danger. When a cautionary act by the [parent] would prevent a child from having his or her physical, mental or emotional condition impaired, that [parent] has failed to exercise a minimum degree of care as a matter of law.

> [Id. at 182.]

The Division must prove by a preponderance of competent, material, and relevant evidence that a child is an abused or neglected child. N.J.S.A. 9:6-8.46(b). See also N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011). This burden of proof requires the Division to demonstrate a "probability of present or future harm." N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 24 (App. Div. 2004).

On appeal, Kate and Bob allege that there was insufficient evidence to support a finding of abuse and neglect. In particular,

Kate alleges there is no evidence in the record of her overdosing and, particularly, no evidence of her overdosing when Billy was in her care.

Here, substantial, credible evidence in the record amply supports the judge's finding of neglect. The evidence supports the judge's decision that Billy's physical, mental, or emotional condition was impaired or was in imminent danger of becoming impaired as a result of Kate and Bob's failure to exercise the minimum degree of care under N.J.S.A. 9:6-8.21(c)(4)(b). Bob allowed Kate to flee the state with Billy despite her ongoing substance abuse and mental health issues. Bob took no action to protect his son from risk once Kate left the state despite knowing Kate's whereabouts with the child. Kate intentionally fled the state to avoid the court's jurisdiction and to interfere with the Division's investigation regarding Billy. Both parents knew the Division was searching for Billy for over a month, yet they refused to cooperate with the Division's efforts to ensure Billy's safety. The actions and inactions of Kate and Bob, under the totality of the circumstances in this case, constituted abuse or neglect consistent with N.J.S.A. 9:6-8.21(c).

Kate argues the judge erred in finding it was not safe to return Billy to her physical custody. The dispositional hearing

was conducted immediately following the judge's fact-finding determination of abuse or neglect as to both parents. Kate did not appear at the dispositional hearing and did not request that Billy be returned to her physical custody. Nor was there a request by Kate's counsel during the dispositional hearing for custody of Billy to be returned to Kate. Because the matter was not presented to the judge, we disregard Kate's appeal argument on this issue. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010). Moreover, Kate's argument is moot based on the judge's November 20, 2017 order transferring custody of Billy to Bob. Kate has not appealed from that order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4784-16T2